IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES, <br><br> Plaintiffs, <br><br> vs. <br><br> FAYE KRUEGER, Regional Forester of Region One of the United States Forest Service, UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture, and UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the United States Department of Interior. <br><br> Defendants. | CV 12–27–M–DLC <br><br> ORDER |

Plaintiffs seek $29,707.50 in attorneys' fees under the Endangered Species Act ("ESA"). (Docs. 77; 78 at 13.) Defendants oppose Plaintiffs' requested amount, arguing that the Court should (1) reduce the total hours to reflect recovery only on Plaintiffs' ESA claim; (2) reduce the hourly rates to accord with similar practices within the District; and (3) reduce the number of hours on account that they are vague, improperly billed, and excessive. (Doc. 87 at 5.) The Court agrees only in part. Because it concludes that Plaintiffs' requested annual hourly

rate increase of $25 per year is not "reasonable" per se, the Court will reduce the requested hourly rate and award Plaintiffs $26,904.61.

## Background

In 2012, Plaintiffs sought judicial review of the U.S. Forest Service's authorization of the Fleecer Mountains Project on the Beaverhead-Deerlodge National Forest and revision to the Beaverhead-Deerlodge National Forest Plan. Plaintiffs complained that the Project and Plan violated the ESA, the National Environmental Protection Act ("NEPA"), and the National Forest Management Act ("NFMA"). On May 24, 2013, the Court partially granted Plaintiffs' motion for summary judgment, enjoining the Project until the federal agencies: (1) supplemented the Project Environmental Assessment; (2) supplemented the Forest Service's Environmental Impact Statement for the Forest Plan; (3) prepared a new biological assessment addressing whether the Project "may affect" grizzly bears; and (4) considered whether lynx "may be present" in the forest and take all necessary action related to that finding.

On February 27, 2018, believing it had complied with the Court's remand order, Defendants filed a motion under Federal Rule of Civil Procedure 60(b)(5) to dissolve the injunction. Plaintiffs opposed the motion, arguing that dissolution was improper because Defendants had not fulfilled the Court's remand instructions in various ways. Particularly, Plaintiffs argued that the Fish and Wildlife

Service's disclosure that lynx "may be present" across the forest triggered a need for the Forest Service to conduct a biological assessment to determine what affects, if any, the Forest Plan may have on lynx. (Doc. 73 at 3.)

The Court held oral argument on this matter on August 13, 2018. Counsel for both parties demonstrated exemplary oral advocacy which aided the Court in making a correct decision on a complex issue of law and fact. The Court issued its written decision on October 15, 2018. (Doc. 73.) Evaluating the parties arguments under Rule 60, the Court denied Defendants' motion to dissolve the injunction because it agreed with Plaintiffs that the Forest Service had not completed everything required to comply with the remand order. On October 29, 2018, Plaintiffs filed a motion for attorneys' fees requesting $29,707.50 under the ESA's fee-shifting provision.

## Discussion

"Ideally[ ] . . . litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Where settlement is impossible, the fee applicant bears the burden to prove the requested amount is reasonable. *Id.* The district court has discretion to determine the amount awarded but must "clearly and concisely explain the grounds for its decision." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1261 (9th Cir. 1987).

Having failed to reach settlement, Plaintiffs move the Court to award

reasonable attorneys' fees under 16 U.S.C. § 1540(g)(4).  In total, Plaintiffs ask for $29,707.50 which represents a fee of $355 per hour for 67.2 hours of work performed by attorney Rebecca K. Smith and $415 per hour for 14.1 hours of work performed by attorney Timothy Bechtold.  Plaintiffs assert that these fees are appropriate because it was the prevailing party, its rates are comparable to "similar work performed by attorneys of comparable skill, experience and reputations" and that its hours "were reasonable and necessary and not excessive."  (Doc. 78 at 2–9.)

## I. Fee Award

Under the ESA, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  16 U.S.C. § 1540(g)(4).  An award is "appropriate" when the plaintiff has achieved some degree of success on the merits.  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983).  The use of the word "appropriate" in the ESA's fee-shifting statute, as opposed to the term "prevailing party" (which is used in numerous other federal statutes that authorize fee-shifting provisions,) "was meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties—parties achieving some success, even if not major success."  *Ass'n of California Water Agencies v. Evans*, 386 F.3d 879, 884 (9th Cir. 2004) (quoting *Ruckelshaus*, 463 U.S. at 688).  When a party is a "prevailing

party"—that is, when it "(1) wins on the merits of its claim, (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiffs[,]" *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007)—the party has necessarily achieved "some success on the merits" making a fee award under the ESA appropriate.

Plaintiffs argue that fees are appropriate because they were the prevailing party, having "secured an enforceable judgment[ ] on the merits." (Doc. 78 at 3 (quoting *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)).) Defendants do not dispute that fees should be awarded for Plaintiffs' ESA claim, but argue that fees are not appropriate for work done on the NEPA and NFMA claims. This argument misconstrues the result Plaintiffs obtained.

Defendants sought to dissolve the injunction granted against the Fleecer Project under Rule 60(b)(5). To prevail, Defendants needed to show that the injunction was no longer necessary because there was a "significant change either in factual conditions or in law." (Doc. 73 at 2–3 (citing *All. for the Wild Rockies v. Weldon*, 2011 WL 3348000, at *2 (D. Mont. Aug. 3, 2011)).) In other words, Defendants needed to show that they had fully complied with the Court's remand order. *Sharp v. Weston*, 233 F.3d 1167, 1170 (9th Cir. 2000).

In opposition to Defendants' Rule 60 motion, Plaintiffs asserted four

theories. To defeat Defendants' motion, Plaintiffs needed to prevail on only one—which is what happened in this case. While the Court disagreed with three of Plaintiffs' arguments—specifically, that the Forest Service failed to (1) supplement the Environmental Assessment to clarify its treatment of permitted and administrative roads, (2) justify its decision to exclude temporary roads from road density calculations, and (3) provide a "full and fair" discussion of the impact of temporary roads on elk—the Court sided with Plaintiffs' first argument that the Forest Service had failed to discharge its duties with respect to the effects of the Forest Plan on lynx. Defendants asked the Court to permit the Fleecer Project to go forward even if it found that there was necessary work to be done on the forest-level, and the Court rejected this contention, finding that it "misconstrued" the legal question.

The Supreme Court has expressly rejected the argument that simply because a plaintiff raises alternate theories—and does not prevail on each and every one—does not mean that a plaintiff cannot recover legal fees in relation to the time it spent developing and briefing those alternate theories. *See Hensley*, 461 U.S. at 436. The Supreme Court has instructed that the proper inquiry is whether the plaintiff obtained the desired result:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases

-6-

of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435 (internal citations and footnotes omitted).

Further, each of Plaintiffs' claims are related because they share "a common core of facts or are based on related legal theories." *Krueger*, 2014 WL 46498, at *4 (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir.1995)). Plaintiffs' claims contain a common core of facts because they allege improper compliance with various environmental laws in the Forest Service's authorization of the Plan and Project. While Plaintiffs prevailed by showing that the agency had not fully discharged its obligation to consider the impact of its forest-wide practices on lynx, Plaintiffs came very close to prevailing in their claim that the Forest Service had not conducted a "full and fair discussion" of the impact from temporary roads on elk.

Plaintiffs are the "prevailing party." By obtaining an enforceable judgment against the Forest Service that preserved the Court's 2012 injunction pending consultation under the ESA, Plaintiffs obtained sufficient success for an award to be appropriate for the legal work in its entirety.

## II. Hourly Rate

Plaintiffs request a 2018 hourly rate of $355 for Ms. Smith and $415 for Mr. Bechtold. This figure is based on the Court's 2013 rate of $230 for Ms. Smith and $290 for Mr. Bechtold. *Krueger*, 2014 WL 46498, at *5–6. In light of the Ninth Circuit Appellate Commissioner's unreported decision in *Pollinator Stewardship Council v. U.S. Environmental Protection Agency*, No. 13-72346, 2017 WL 3096105 (9th Cir. June 27, 2017), which awarded fees to attorneys located in Seattle and San Francisco, Plaintiffs argue that a $25 per hour annual increase is reasonable. (Doc. 78 at 6.) Taking their previously awarded 2013 rates, Plaintiffs request a $25 increase to Ms. Smith and Mr. Bechtold's hourly rates for each of the past five years.

Defendants do not contest that a $230 hourly rate for Ms. Smith and a $290 hourly rate for Mr. Bechtold represents a reasonable starting point. However, Defendants take issue with the requested $25 annual increase, noting that the District of Montana has previously recognized a $10 annual increase as the going rate. (Doc. 87 at 11.)

The ESA permits awards of "reasonable" attorneys' fees. Reasonable fees are determined by multiplying a reasonable number of hours by a reasonable billing rate, a calculation known as the "lodestar." *Hensley*, 461 U.S. at 433. A reasonable hourly rate is determined by the prevailing market rate in the relevant

-8-

legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This rate should represent what a lawyer of comparable skill, experience, and reputation could command in the same community for comparably complex litigation. *Id.* In the environmental law context, the District of Montana has defined the "relevant legal community" as "environmental attorneys in Montana with commensurate experience, reputation, and skill." *All. for the Wild Rockies v. U.S. Dep't of Agric.*, 2016 WL 4766234, at *7 (D. Mont. Sept. 13, 2016).

The District of Montana has previously recognized a $10 increase in hourly rate as reasonable. *See, e.g., Weldon*, 921 F. Supp. 2d at 1080 (awarding Ms. Smith $210/hour for work performed in 2011 and increasing the hourly rate by $10/hour to $220/hour for work in 2012). Plaintiffs' reliance on *Pollinator Stewardship* is not illuminating. First, that case did not directly address the issue of an appropriate annual increase, even though it seems to have awarded two attorneys upwards of $20 over their previous years' hourly rate. *Pollinator Stewardship Council*, 2017 WL 3096105, at *6. Second, Seattle and San Francisco are not the prevailing legal community and so a reasonable annual increase in those cities does not control what is "reasonable" for the District of Montana. Further, *Pollinator Stewardship* provides no information to indicate whether other circumstances or factors may have warranted some or part of the raise. Plaintiffs read *Pollinator Stewardship* to mean that a $25 hourly raise *every*

-9-

*year* is appropriate, but this is not necessarily so. Other factors, such as additional specialized training or market competition, may cause an attorney to raise his or her rates more steeply one year than the next. The Court declines to read *Pollinator Stewardship* to say that a $25 hourly increase every year is "reasonable."

In principle, Plaintiffs' request for an annual raise is reasonable. Not only do costs of living rise, but an annual raise reflects an attorney's additional year of skill and experience. However, the linear model proposed by Plaintiffs—in that it ties hourly rate directly to years in practice—is lacking.

Depth of experience and years of experience are imperfectly correlated, and some attorneys demonstrate experience and legal judgment beyond their years of practice. While an attorney's number of years in practice is a good starting point to estimate an attorney's depth of experience, other factors—such as his or her courtroom experience, continued education, mentorship, and prior work on complex cases—are also highly indicative of an attorney's experience and overall "quality of representation." *See Blum*, 465 U.S. at 898–99. To estimate an attorney's proficiency in contrast to the other attorneys within the prevailing market, some courts have looked at the role the attorney played in the litigation (whether the attorney was first or second chair) or the attorney's effectiveness in the courtroom. *See Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank*

*B.A.*, 478 F. Supp. 2d 508, 510 (S.D. N.Y. 2007) (awarding a relatively high hourly rate justified by the attorney's "highly effective" courtroom demeanor); *Schwarz*, 73 F.3d at 908 (approving of a higher hourly rate for lead counsel). The Ninth Circuit has also noted that what an attorney bills and receives, while not determinative, is not irrelevant because the attorney and his or her clients are a part of that market. *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006).

## A. Mr. Bechtold

As a starting point, both Plaintiffs and Defendants agree that a $290 rate for work performed by Mr. Bechtold in 2013 is reasonable. Having reviewed Mr. Bechtold's qualifications along with the Court's knowledge of Mr. Bechtold from his previous Court appearances, the Court agrees.

Mr. Bechtold is a highly skilled attorney who possess considerable expertise in environmental litigation. Mr. Bechtold graduated from Harvard with a concentration in biology and focus in ecology. He received an M.S. in Environmental Studies where he specialized in public land use and policy. While in law school, Mr. Bechtold served as an editor of the *Public Land and Resources Law Review* and published an article on the listing of the bull trout under the Endangered Species Act. He graduated in 2000 with high honors. And in the 19 years since graduation, Mr. Bechtold has built a successful practice in

-11-

environmental litigation. He has appeared before the Court on numerous occasions, many of them with Ms. Smith as co-counsel.

While the Court is unpersuaded that a $25 annual raise is reasonable per se, the Court does not intend this conclusion to discredit, in any way, the experience, skill, and reputation of Mr. Bechtold. Following the past practice in the District of Montana to award a $10 per year increase, the Court recognizes a 2018 hourly rate of $340 as fair and consistent for an attorney of Mr. Bechtold's caliber.

### B. Ms. Smith

Ms. Smith asks for a 2018 hourly rate of $355. Defendants argue this rate is unreasonably high.

To determine an attorney's reasonable hourly rate, the Court looks to the "prevailing legal community." Here, the Court considers what other environmental litigators of "comparable experience, skill and reputation,"—Mr. Bechtold included—are charging or receiving for their work. *Id.* Determining an hourly rate in parity with similarly situated lawyers affords "fairness, predictability, and uniformity." *Carson*, 470 F.3d at 892.

The Court has already determined that an hourly rate of $340 for work performed by an experienced and highly capable environmental attorney in the handling of a complex matter is reasonable. Therefore, $340 is a fair rate for Ms. Smith assuming that she is an attorney of "comparable experience, skill and

-12-

reputation."

Having reviewed Ms. Smith's qualifications along with the Court's knowledge of Ms. Smith from her previous appearances, the Court is convinced that she is deserving of a competitive rate. Ms. Smith holds a graduate degree in Environmental Studies and a J.D. with a certificate in Environmental Law. During law school, Ms. Smith was an editor of the *Public Land and Resources Law Review*, a member of the National Moot Court Team, and published three scholarly articles on environmental policy issues. Not only did she graduate with high honors, but Ms. Smith was class valedictorian. Now, a decade into private practice, Ms. Smith is a sought-after litigator with extensive courtroom experience.

While the Court's 2013 award of attorney's fees recognized the difference in the years of practice between Mr. Bechtold and Ms. Smith, the Court is no longer convinced that this is the most significant metric to quantify "experience." Ms. Smith, who had only been practicing for five years at that time, is now a decade into her career and from the Court's evaluation of her work, she has obtained significant expertise.

In evaluating an attorney's experience, the Court considers not only Ms. Smith's experience as an environmental litigator and leading attorney at her firm, but it considers the crucial role Ms. Smith played in this litigation and the value she brings her clients as a "highly effective" oral advocate. *See Insinga*, 478 F.

--

Supp. 2d at 510. Plaintiffs' billing records indicate that Ms. Smith carried the lion's share of the work in this litigation, which is not to discredit the valuable work performed by Mr. Bechtold in revising, reviewing, and strategizing with Ms. Smith. However, it is clear that Ms. Smith is the primary brief drafter and oral advocate, a position similar to that of first chair. After holistic consideration, the Court is convinced that Ms. Smith and Mr. Bechtold are attorneys of "comparable experience, skill and reputation," so that an hourly rate that is appropriate for Mr. Bechtold and consistent with rates in the prevailing legal community is also appropriate for Ms. Smith.

### C. Reasonable Rate for Fee Related Work

Defendants argue that the Court should reduce the hourly rate for work performed on the motion for attorneys' fees, because such work does not require specialized knowledge. (Doc. 87 at 15.) The Court agrees. Because attorneys' fees are calculated by taking into account the complexity of the litigation and an attorney's specialized expertise, the rates awarded for environmental litigation do not justify the same for routine matters. *See Krueger*, 2014 WL 46498, at *6. This approach is consistent with the District's past practice. *See id.* Even the Affidavit submitted by Matthew Bishop to support Ms. Smith's request of attorneys' fees recognizes that the EAJA statutory hourly rate of $200.87 is reasonable for the preparation of a fee petition. (Doc. 78-1 at 16). Therefore,

the Court will award $200.87 for work performed on the motion for attorneys' fees.

### III. Hours

Finally, Defendants request that the Court reduce the number of hours requested by Plaintiffs on account that they are "vague, improperly billed to the government, and excessive." On the contrary, Plaintiffs' records are thorough, accurate, and reflect a careful level of detail. Plaintiffs contend that they have billed according to customary billing practices in private practice and have billed only as reasonably necessary to achieve a good outcome. The Court finds nothing in Plaintiffs' records that cast any doubt as to the necessity or reasonableness of the work performed.

Accordingly, the Court will award fees as follows:

|  | Hourly Rate | Hours | Total |
|---|---|---|---|
| **Rebecca Smith** |  |  |  |
| 2018 District Court | $340 | 62.8 | $21,352.00 |
| Fee petition | $200.87 | 4.4 | $883.83 |
| **Timothy Bechtold** |  |  |  |
| 2018 District Court | $340 | 13.2 | $4,488.00 |
| Fee petition | $200.87 | .9 | $180.78 |
| **Total** |  |  | $26,904.61 |

Therefore, IT IS ORDERED that Plaintiffs' Motion for Attorney Fees is (Doc. 77) GRANTED. The Court will reduce the requested amount and award Defendants to pay $26,904.61.

DATED this 4th day of April, 2019.

Dana L. Christensen, Chief District Judge
United States District Court