IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES, | CV 12–27–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| LEANNE MARTEN, Regional Forester of Region One of the United States Forest Service, UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture, and UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the United States Department of Interior, | |
| Defendants. | |

Before the Court is Defendants' Second Motion to Dissolve Injunction.

(Doc. 92.)  The motion requests that the Court dissolve the permanent injunction

established by the Court's May 24, 2013 order (Doc. 27), arguing that Defendants

have completed the environmental analyses required by that order and by the

Court's October 15, 2018 order denying Defendants' previous motion to dissolve

the injunction (Doc. 73).  (Doc. 92 at 2.)  Plaintiffs oppose the motion.  (Doc. 94.)

For the reasons stated herein, the motion will be granted.

1

The facts and history of this case are discussed in-depth in the Court's previous orders granting a permanent injunction against the Fleecer Mountains Project (the "Project"), *Native Ecosystems Council v. Krueger*, 946 F. Supp. 2d 1060, 1066–68 (D. Mont. 2013) ("*Native Ecosystems I*"), and denying Defendants' first motion to dissolve the injunction, *Native Ecosystems Council v. Krueger*, 348 F. Supp. 3d 1065, 1067–76 (D. Mont. 2018) ("*Native Ecosystems II*"). Accordingly, those facts are not repeated here except as necessary to the Court's decision.

## LEGAL STANDARDS

This Court "retains the power to modify the terms of its injunction in the event that changed circumstances require it." *United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985). A court may "relieve a party or its legal representative from a final judgment, order, or proceeding [if] the judgment has been satisfied, released or discharged." Fed. R. Civ. P. 60(b)(5). A party seeking a dissolution of an injunction may demonstrate that the change is warranted by showing "a significant change either in factual conditions or in law." *All. for the Wild Rockies v. Weldon*, No. CV 09-107-M-DWM, 2011 WL 3348000, at *2 (D. Mont. Aug. 3, 2011) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). A significant change in facts occurs when a party demonstrates its compliance with a court's remand order. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

2

In denying Defendants' previous motion to dissolve the injunction in this case, one issue remained: Defendants had not completed a consultation on the potential effects of the Beaverhead-Deerlodge National Forest Plan ("Forest Plan") on Canada lynx and thus had not complied with section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536. *Native Ecosystems II*, 348 F. Supp. 3d at 1068–71. The United States Forest Service's first step in complying with section 7 is to obtain from the United States Fish and Wildlife Service ("FWS") "a list of any listed or proposed species or designated or proposed critical habitat that may be present in the action area." 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12(c)-(d). If the FWS advises that a listed species or critical habitat "may be present," the Forest Service must complete a biological assessment to determine if the proposed action "may affect" or is "likely to adversely affect" the listed species. 16 U.S.C. § 1536(c)(1); 50 C.F.R. §§ 402.12(f), 402.14(a), (b)(1); *Forest Guardians v. Johanns*, 450 F.3d 455, 457 (9th Cir. 2006). If the Forest Service determines that an action "may affect" a listed species, the Forest Service must consult with the FWS under section 7 of the ESA. 50 C.F.R. § 402.14(a), (b)(1); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1027 (9th Cir. 2012). Consultation may be formal or informal. 50 C.F.R. § 402.14; *Karuk Tribe of Cal.*, 681 F.3d at 1027. Formal consultation is required where the Forest Service has determined that an action is "likely to adversely affect a listed species." 50 C.F.R. § 402.14(a), (b)(1).

3

But where the Forest Service determines that an action "may affect ... [but is] not likely to ... adversely affect[]" a listed species, the Forest Service may initiate informal consultation. *Karuk Tribe of Cal.*, 681 F.3d at 1027 (quoting 50 C.F.R. § 402.14(b)(1)). If the FWS concurs with the Forest Service's determination that a listed species "is not likely to be adversely affected," both agencies have fulfilled their respective obligations and the federal action may proceed. 50 C.F.R. § 402.13(c).

## DISCUSSION

### I.     Post-Remand Proceedings

Following this Court's order in *Native Ecosystems II*, the Forest Service submitted to FWS a biological assessment regarding the effects of the Forest Plan on Canada lynx on June 27, 2019. (Docs. 93-4, 93-5.) The Forest Service concluded that the Forest Plan may affect but is not likely to adversely affect lynx and will have no effect on lynx critical habitat. (Doc. 93-4 at 5, 61–64.) The biological assessment noted that survey efforts to determine whether the Forest was "occupied" by lynx, as defined in the amended Lynx Conservation Agreement ("LCA"), were ongoing. (*Id.* at 12.) FWS concurred with the Forest Service's determination and concluded informal consultation a few days later, concluding in summary that "because the Forest is considered an unoccupied, secondary area for lynx and because quality lynx habitat is lacking on the Forest, effects to lynx from

Forest Plan management actions would be minimal and would not significantly affect how lynx would use the habitat." (Doc. 93-6.)

In 2020, an interagency team concluded a review of the occupation status of lynx in the Forest based on recent lynx detections, and the team concluded that almost all mountain ranges on the Forest contain "occupied" lynx habitat as defined by the LCA. (Doc. 93-7.) The Forest Service reinitiated consultation based on those findings (*id.*), and on January 4, 2021, it submitted a biological assessment to FWS concluding that implementing the Forest Plan within the standards and guidelines of the Northern Rockies Lynx Management Direction ("NRLMD") may affect and is likely to adversely affect lynx, but would have no effect on lynx critical habitat because none exists in the Forest. (Docs. 93-8, 93-9 at 2, 68–70.) An analysis specific to the Fleecer Project concluded that "there is not an increased expectation that lynx would use the Fleecer Mountains area based on home range size," and accordingly, the Forest Service expects direct effects to lynx from the Project to be unlikely particularly because of the size and distribution of project activities. (Doc. 93-10 at 13–14.) Additionally, effects to lynx habitat are expected to be insignificant because the Fleecer Project will treat only 802 acres of lynx habitat, no foraging habitat would be affected, and no multi-story mature habitat would be treated. (*Id.*) The Forest Service concluded that the

Fleecer Project is not likely to adversely affect Canada lynx or their habitat.  (*Id.* at 13.)

FWS issued a biological opinion on April 5, 2021, which superseded the 2019 consultation and concluded that the effects of implementing the Forest Plan are not likely to jeopardize lynx, and the Fleecer Project will have insignificant effects on lynx because few acres of snowshoe hare habitat (lynx foraging habitat) would be treated, and approved timber projects on the Forest, including the Fleecer Project, would likely create additional hare habitat in the long term.  (Doc. 93-1 at 29–30, 37–43.)  The Forest Service then concluded that the updated lynx consultation for the Forest Plan and the Fleecer Project did not present significant new circumstances or information that would require additional NEPA review.  (Doc. 93-11.)

## II.    Analysis

The critical issue identified by this Court's order denying Defendants' first motion to dissolve the injunction in this case was that FWS had issued a new species list for the entire Beaverhead-Deerlodge National Forest and determined that lynx "may be present" on the Forest as secondary or peripheral lynx habitat, and FWS did not limit this determination to any particular geographic area of the forest.  *Native Ecosystems II*, 348 F. Supp. 3d at 1069–70.  FWS and the Forest Service had not previously measured the potential effects of the Forest Plan on

6

lynx, so "unless there is some other reason why a biological assessment or

biological opinion was not required to determine whether the Forest Plan 'may

affect' lynx," Defendants had not fulfilled their obligations under the ESA.  *Id.* at

1070.  The Court rejected Defendants' argument that programmatic consultation

was not required because FWS had recently issued a biological opinion

determining that the NRLMD is not likely to adversely affect lynx; the Court

concluded that although the NRLMD biological opinion mooted claims related to

geographic areas governed by the NRLMD—Lynx Analysis Units—it did not

moot Plaintiffs' claim here because there were provisions of the Forest Plan other

than the NRLMD that may affect lynx outside of areas protected by the NRLMD,

and FWS had determined that lynx may be present throughout the Forest.  *Id.*

Accordingly, the Court continued to enjoin the Fleecer Project until Defendants

completed consultation to determine what effects, if any, the Forest Plan may have

on lynx.  *Id.* at 1071.

Defendants contend that the consultation process described above satisfies

the ESA and this Court's remand order, and thus the injunction should be dissolved

and judgment should be entered in Defendants' favor.  (Doc. 93 at 1.)  Plaintiffs

respond with two arguments: (1) the biological assessment and biological opinion

"suffer[] from the same flaw" identified in *Native Ecosystems II*—"the analysis is

incomplete because it addresses mapped 'lynx habitat' where the [NRLMD]

7

applies, instead of all areas where lynx 'may be present' on the Forest"; and (2)

"dissolution is not equitable at this time because the agencies have unlawfully

stripped legal protections for lynx from 1.1 million acres during the remand in this

case[,]" and the Project should not be allowed to move forward until the agencies

"comply with their legal obligations under the ESA, NEPA, and NFMA regarding

this *de facto* Forest Plan amendment[.]"  (Doc. 94 at 2.)

While Plaintiffs are correct that the Court stated that the Fleecer Project

must be enjoined until Defendants "complete *forest-wide* consultation to determine

what effects, if any, the Forest Plan may have on lynx[,]" *Native Ecosystems II*,

348 F. Supp. 3d at 1071 (emphasis added), the Court did not intend to impose

specific geographic requirements on the agencies' consultation.  Rather, the

Court's description of the consultation was based on FWS's conclusion at the time

that lynx "may be present" on the entire Forest.  *Id.* at 1069–70.  In the

consultation process following the Court's decision, Defendants relied on

previously unavailable data regarding lynx detections, vegetation, and snow depth

and sophisticated modeling to identify potential lynx habitat on the Forest.  (*See,

e.g.*, Doc. 93-1 at 9–12; Doc. 93-9 at 8–13, 76–155.)  Defendants' reliance on this

data "requires application of scientific methodology and, as such, is within the

agency's discretion" so long as the Court can determine from the record that the

agencies have not acted arbitrarily.  *Native Ecosystems Council v. Dombeck*, 304

F.3d 886, 902 (9th Cir. 2002).  That requirement is amply satisfied here.

Defendants provided support in the record for their identification of various forms

of lynx habitat and for the agencies' decision to use effects on lynx habitat as a

proxy for the potential effects of the Forest Plan on lynx.  (Doc. 93-1 at 9–12; Doc.

93-9 at 7–13.)  In particular, FWS observed that the Forest is considered

secondary/peripheral lynx habitat.  (Doc. 93-1 at 9.)  FWS noted that, according to

the Canada lynx conservation assessment and strategy (LCAS), 3rd edition, which

is a "source of best available scientific information that provides a thorough review

of lynx and lynx management," "the focus of management in secondary areas is on

'providing a mosaic of forest structure to support snowshoe hare prey resources for

individual lynx that infrequently may move through or reside temporarily in the

area' and that landscape connectivity should be maintained to allow for movement

and dispersal."  (*Id.* at 8–9.)  FWS also relied on LCAS for the proposition that

"the amount and quality of habitat required to support an independent adult or

subadult disperser is less than necessary to support reproduction and sustain a local

population."  (*Id.* at 9.)  FWS further noted that it was unclear whether the recently

detected lynx in the Forest were transient or resident and found that the majority of

lynx habitat on the Forest "would not likely support foraging opportunities for lynx

unless altered by management activities or natural disturbances."  (*Id.* at 10–11.)

Defendants nevertheless included all of this lynx habitat in their analyses and

generally based their analyses on worst-case-scenario assumptions of adverse impact to lynx habitat. (*Id.* at 10–11, 25–29, 37–38, 40.) In sum, Defendants relied on newly available scientific data to establish where lynx may be found on the Forest, and in doing so, they utilized an expansive approach to identifying potential habitat despite the fact that the Forest is considered secondary/peripheral habitat according to the best available science.[1] The record justifies Defendants' decision to focus their analyses of the Forest Plan's effects on lynx to lynx habitat within the Forest, and the Court therefore will defer to the agencies' expertise in that respect. Accordingly, the Court concludes that the consultation does not violate the Court's order in *Native Ecosystems II*.

The Court now turns to the agencies' compliance with the ESA. The Forest Service obtained a species list from FWS, which determined in 2013 that Canada lynx "may be present" on the Forest and did not provide any geographical limitations on the lynx range within Montana. (Doc. 56-7.) Thus, the agencies complied with the first step of the consultation process. 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12(c)-(d). Because FWS advised that a listed species "may be present," the Forest Service had to complete a biological assessment to determine

---

[1] The Court also notes that, earlier in this case, FWS uncontroversially placed habitat-based geographic limitations on where other species, like bull trout and wolverines, may be present in the Forest. *Native Ecosystems II*, 348 F. Supp. 3d at 1069–70. The agencies' reliance on newly available data to place geographic bounds on lynx within the Forest during the consultation process reflects thorough and scientifically supported analyses rather than an effort to evade the Court's or the ESA's requirements.

10

if the proposed action "may affect" or is "likely to adversely affect" lynx. 16

U.S.C. § 1536(c)(1); 50 C.F.R. §§ 402.12(f), 402.14(a), (b)(1); *Forest Guardians*,

450 F.3d at 457. The Forest Service did so—twice. (Doc. 93-4; Doc. 93-9.) In

both instances, the Forest Service determined that the Forest Plan "may affect"

lynx, so the Forest Service was required to consult with the FWS under section 7

of the ESA. *Karuk Tribe of Cal.*, 681 F.3d at 1027. The first biological

assessment determined that the Forest Plan was not likely to adversely affect lynx

(Doc. 93-4 at 5), so informal consultation was permissible. 50 C.F.R.

§§ 402.14(a), (b)(1), 402.12(a). FWS concurred with the Forest Service's

determination (Doc. 93-6), and thus both agencies had fulfilled their respective

consultation obligations, 50 C.F.R. § 402.13(c), *until* the Forest Service

appropriately reinitiated consultation in light of new information (Doc. 93-7). The

Forest Service thereafter submitted a new biological assessment, which determined

that the Forest Plan may affect and was likely to adversely affect lynx. (Doc. 93-9

at 2.) This determination necessitated formal consultation, which triggered FWS's

obligation to prepare a biological opinion. 50 C.F.R. § 402.14(a)–(b), (e). FWS

prepared a biological opinion, which concluded that the effects of implementing

the Forest Plan are not likely to jeopardize the continued existence of the Canada

lynx, and no designated critical habitat will be affected. (Doc. 93-1 at 8, 39–43.)

Accordingly, the agencies discharged their consultation obligations under the ESA

and its implementing regulations.  16 U.S.C. § 1536(a)(2), (b); 50 C.F.R. § 402.14.
As discussed above, the Court must defer to the agencies' reasoned scientific
judgment in focusing their analyses on lynx habitat, and thus the agencies did not
fail to fulfill their duties under the ESA.

Defendants argue that their section 7 consultation concerning effects on lynx
moots Plaintiffs' last remaining claims, which challenged Defendants' failure to
consult about potential impacts on lynx.  (Doc. 93 at 13.)  Plaintiffs respond that
the case is not moot because Defendants have not complied with the ESA and the
Court's previous order because they failed to analyze effects on lynx across the
entire Forest.  (Doc. 94 at 10–12.)  In accordance with the analysis above, because
Defendants have now complied with section 7 of the ESA by consulting on both
the Forest Plan and the Project's potential impacts on lynx, the Court agrees with
Defendants that this case is moot and must be dismissed.  *All. for the Wild Rockies
v. Savage*, 897 F.3d 1025, 1031–32 (9th Cir. 2018).

Also in accordance with the analysis above, the Court declines Plaintiffs'
invitation to exercise equitable jurisdiction over Plaintiffs' challenges to the
substance of the agencies' lynx habitat mapping decisions, which they characterize
as a "*de facto* Forest Plan amendment that removed lynx protections on almost
one-third of the Forest" (Doc. 94 at 13–24).  The Court agrees with Defendants—
and Plaintiffs acknowledge—that the agencies' compliance with NEPA, the ESA,

and the NMFA with respect to their lynx habitat mapping decisions may be appropriately addressed in a new lawsuit rather than in the context of Defendants' motion to dissolve the injunction in this case, which must be granted now that Defendants have complied with their consultation obligations under the ESA.

CONCLUSION

Accordingly, IT IS ORDERED that Defendants' Second Motion to Dissolve Injunction (Doc. 92) is GRANTED.  The injunction entered on May 24, 2013 (Doc. 27) is DISSOLVED, and this case is DISMISSED AS MOOT.

The Clerk shall enter judgment in favor of Defendants and close this case.

DATED this 6th day of December, 2022.

Dana L. Christensen, District Judge
United States District Court